Thos. Scott et al. v. James Osenton.

**Champerty and Maintenance—Adverse Possession.**
> A sale and purchase of land which at the time was in the adverse possession of a third person is void under the act against champerty.

**Adverse Possession—Declaration of Adverse Holder.**
> Where one claimed more land than his deed called for, and his fence extended beyond the boundary, his mere declaration, after his possession had ripened into title, that he would reset his fence and put it on the line, is not binding on him.

**Adverse Possession—Continuity of Possession—Evidence.**
> The evidence was held insufficient to disturb a possession so ancient and acquiesced in until the natural objects called for have been removed or destroyed by the influence of time.

APPEAL FROM CARTER CIRCUIT COURT.

October 31, 1873.

Opinion by Judge Peters:

The parties to this controversy claim from one common source. Scott's deed bears date Oct. 28, 1820, under which he claims and took possession; and a part of the land in controversy, as appears from the evidence, was cleared and fenced at that early period. The deed under which Osenton claims, bears date Dec., 1844, and if Scott was in possession of the land, claiming it as his own, at the date of Osenton's deed, Osenton certainly

acquired no title by his deed to so much of the land as was adversely held by Scott; but to that extent his deed was void under the Act against Champerty and Maintenance.

But it is urged very plausibly in argument that Scott only claimed to the boundary of his deed, and unless his deed covers this disputed territory, he did not claim it; and upon ascertaining that his deed did not, in fact, cover the land, his holding was not hostile.

Scott, as the proof shows, claimed all the time that his deed did cover the land, and insisted that the dividing line between his tract, and appellee's extended to the red dotted line on the surveyor's map. A portion of the land then not inclosed by his fence he cleared and made a turnip patch on, as the witnesses say, more than 30 years ago. And there has been no period of time, perhaps, since he entered under his deed, that he might not have been sued for the land now in dispute.

Neither he nor those who now claim under him, have ever surrendered their possession to appellee, but they appear all the time to have denied his right, and are now resisting, by all the means the law affords them, his claim to the land. Scott, during his life, said to Thompson that when he reset his fence he would move it in, but he never did it; and his mere declaration that he would do so after his possession had ripened into a legal title could not bind him.

There is very considerable conflict in the evidence. The surveyor in his report says that "the corner trees at the river being gone, and not finding any at either point on Creek Paum, at the end of the line from the river out, makes it difficult to determine, for the distances are nearly all incorrect, and some of the courses are also incorrect fixing the corners at the places which are shown for them." He therefore leaves the question in great doubt as to where the true line is, and we regard the evidence as too uncertain, and wholly insufficient to authorize a disturbance of a possession so ancient, and acquiesced in until the natural objects called for have been removed by the destroying influences of time.

Wherefore the judgment is reversed, and the cause is remanded with directions to dismiss the petition.

*Dulin, Summer, E. B. Wilhort, for appellants.*

*Ireland, Botts, for appellee.*